UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

(8) FELIX NACEDO FLORES,

    Defendant.

**MEMORANDUM OF LAW & ORDER**
Criminal File No. 15-210 (MJD/SER)

Surya Saxena, Assistant United States Attorney, Counsel for Plaintiff.

Felix Nacedo Flores, pro se.

## I. INTRODUCTION

This matter is before the Court on Defendant Felix Nacedo Flores' Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. [Docket No. 476]

## II. BACKGROUND

On February 1, 2016, the grand jury returned a Superseding Indictment charging Defendant Felix Nacedo Flores with Count 1, Conspiracy to Distribute and Possess with the Intent to Distribute a Detectable Amount of

1

Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 846. [Docket No. 177] On May 13, 2016, Defendant pled guilty to Count 1 of the Superseding Indictment. Count 1 did not carry a statutory mandatory minimum sentence and carried a statutory maximum sentence of 20 years.

On July 19, 2017, the Court held a sentencing hearing. There were no objections to the Guideline calculations contained in the Presentence Report ("PSR"). The Court adopted those calculations and held that the applicable Guidelines were:

| | |
|---|---|
| Total Offense Level: | 31 |
| Criminal History Category: | III |
| Imprisonment Range: | 135 to 168 months |
| Supervised Release: | 3 years |
| Fine Range: | $15,000 to $1,000,000 |
| Special Assessment: | $100 |

During sentencing, defense counsel explained that Defendant was in state custody for 14 to 15 months in Nevada before he was indicted and transferred to federal custody. (Sentencing Tr. 5-6.) The Government explained that Defendant would only get credit for the time in state custody if the state charges were dismissed. (Id. 8.)

The Court then sentenced Defendant to 120 months imprisonment. (Sentencing Tr. 9.) The Court explicitly stated that it was granting a 15-month

downward variance to account for the 14 months Defendant spent in state custody.  (Id. 9, 12-13.)  The Court then stated that Defendant would be credited for the time that he had spent in federal custody.  (Id. 9.)  Defendant did not file an appeal.

Defendant has now filed a motion under 28 U.S.C. § 2255.  [Docket No. 476]

## III. DISCUSSION

### A. Standard for Relief under 28 U.S.C. § 2255

28 U.S.C. § 2255(a) provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.
>
> Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice.  A movant may not raise constitutional issues for the first time on collateral review without establishing both cause for the procedural default and actual prejudice resulting from the error.

United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996) (citation omitted). Alternatively, the procedural default can be excused if the defendant can demonstrate that he is actually innocent. Bousley v. United States, 523 U.S. 614, 622 (1998).

A petitioner is entitled to an evidentiary hearing on a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

> [A] petition can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.

Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995) (citations omitted).

### B. Ineffective Assistance of Counsel Standard

In order to gain relief for ineffective assistance of counsel, Defendant must establish both that his counsel's performance "fell below an objective standard of reasonableness," and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 688, 692 (1984). The burden is on Defendant to establish a "reasonable probability that, but for counsel's unprofessional errors, the result would have been different." Id. at 694. "A

reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Thai v. Mapes, 412 F.3d 970, 978 (8th Cir. 2005) (quoting Strickland, 466 U.S. at 687). The Court "need not address the reasonableness of the attorney's behavior if the movant cannot prove prejudice." United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996).

Counsel's performance is deficient if it falls outside of the "wide range of reasonable professional assistance," although there is a strong presumption that counsel's conduct falls within this broad spectrum. Strickland, 466 U.S. at 689. "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. "Counsel's performance is deficient when it is less competent than the assistance that should be provided by a reasonable attorney under the same circumstances." Chambers v. Armontrout, 907 F.2d 825, 828 (8th Cir. 1990) (citing Strickland, 466 U.S. at 687).

## C. Validity of Defendant's Guilty Plea

"The general rule is that a valid guilty plea waives all non-jurisdictional defects. Stated differently, a valid guilty plea forecloses an attack on a conviction unless on the face of the record the court had no power to enter the conviction or impose the sentence." Walker v. United States, 115 F.3d 603, 604 (8th Cir. 1997) (citation omitted). "When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise." Id. (quoting United States v. Morrison, 967 F.2d 264, 268 (8th Cir. 1992)).

"[I]n collaterally attacking a plea of guilty a prisoner 'may not ordinarily repudiate' statements made to the sentencing judge when the plea was entered . . . ." Pennington v. Housewright, 666 F.2d 329, 331 (8th Cir. 1981) (quoting Blackledge v. Allison, 431 U.S. 63, 73 (1977)).

> [O]nce a person has entered a guilty plea any subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible. Additionally, a district court is not required to conduct an evidentiary hearing on allegations which amount[ ] to no more than a bare contradiction of statements petitioner made when she [or he] pled guilty.

Tran v. Lockhart, 849 F.2d 1064, 1068 (8th Cir. 1988) (citations omitted).

> While a guilty plea taken in open court is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings.

Nguyen v. United States, 114 F.3d 699, 703 (8th Cir. 1997) (citation omitted).

The record in this case incontrovertibly shows that Defendant voluntarily entered into his guilty plea after consulting with his attorney and with full knowledge of his rights, the consequences of his guilty plea, and the facts to which he was admitting.

### 1. Understanding of the English Language

Defendant argues that he did not understand his guilty plea because of his limited knowledge of the law and his difficulty with the English language. He claims that this lack of full understanding caused him to "forfeit [his] appeal rights and other forms of relief by signing the plea with a waiver of those benefits." (§ 2255 Motion at 8.)

During the change of plea hearing, after Defendant was sworn in, the following exchange occurred:

THE COURT: And how far have you gone in school?

THE DEFENDANT: I got my GED.

7

THE COURT: And you can read and write the English language?

THE DEFENDANT: Yes, sir.

THE COURT: Did you have any problems reading the plea agreement and sentencing stipulations?

THE DEFENDANT: No, sir.

THE COURT: Would you read the first paragraph for me out loud?

THE DEFENDANT: Number one, charges, the defendant agree to plead guilty to Count 1 of the super indictment which charged the defendant with conspiracy to distribute and possess with the intent to distribute detectable amount of methamphetamine actual, a controlled substance, in violation of Title 21, United States Code, Section 841(a), 841(b)(A)(C), and 846.

THE COURT: All right. When you read the plea agreement, did you understand it?

THE DEFENDANT: Yes, sir.

(Plea Tr. 6-7.)

Under oath, Defendant stated that he could read and write in English and that he understood the Plea Agreement. He demonstrated his ability to read the Plea Agreement to the Court. Defendant's new assertion that he did not understand the plea proceedings and that an interpreter should have been provided is foreclosed by his testimony and conduct during the plea hearing.

8

See, e.g., United States v. Maldonado, 241 F. App'x 343, 344 (8th Cir. 2007) ("[H]e cannot now assert as error the lack of an interpreter at the plea hearing, when he assured the court at the hearing that he understood English, did not need an interpreter, and would inform the court if he did not understand the proceedings.").

### 2. Understanding of the Plea Agreement

Defendant's sworn statements at the plea hearing belie his claim that he did not understand the Plea Agreement:

> THE COURT: And did you have enough time, did you have sufficient time to go over the plea agreement with your attorney, Mr. Paule?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And did he go over that plea agreement with you line by line?
>
> THE DEFENDANT: Yes, he did.
>
> THE COURT: And did he explain the plea agreement to you?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And did he answer any and all questions that you may have had regarding the plea agreement?
>
> THE DEFENDANT: Yes, he did.

9

THE COURT: And were you satisfied with those answers?

THE DEFENDANT: Yes, sir.

THE COURT: And do you agree with everything that is in the plea agreement?

THE DEFENDANT: Yes, sir.

THE COURT: Well, you -- you say yes, sir but your body language says something different.

THE DEFENDANT: Your Honor, I have to admit my -- my responsibility on this case so I admit I -- I understand everything it said.

THE COURT: Okay. I ask you to turn to the last page of the plea agreement. Is that your signature, sir?

THE DEFENDANT: Yes, sir, it is.

THE COURT: And does that mean that you've read the document?

THE DEFENDANT: Yes, sir.

THE COURT: That you understand it?

THE DEFENDANT: I did.

THE COURT: And that you agree with it?

THE DEFENDANT: Yes, sir.

(Plea Tr. 7-8.)

> THE COURT: I've gone over your rights with you here. Do you have any questions of me, your attorney, or the government regarding any of your constitutional rights?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Do you understand them?
>
> THE DEFENDANT: Yes, I do.
>
> THE COURT: And do you still wish to enter a plea of guilty?
>
> THE DEFENDANT: Yes, sir.

(Plea Tr. 14.)

### 3. Appeal Rights

Defendant asserts that he did not appeal because his lawyer did not discuss his appeal rights with him. He argues that he did not know that, by signing the Plea Agreement, he "was giving up [his] appeal rights and most rights to collateral attack." (§ 2255 Motion at 4.) Defendant states that, at "one point" his attorney told him "that he was goi[ng] to fight for my case but he never did." (Id.)

The Plea Agreement does not contain any waiver of Defendant's right to appeal or file a collateral attack under § 2255. [Docket No. 275] During the plea hearing, the Court explained Defendant's appeal rights as follows:

11

> THE COURT: If I accept your plea of guilty and sentence you, you will have a limited right to appeal my decision to the Eighth Circuit Court of Appeals which sits in St. Louis [].  That appellate court is the Court that reviews all of my sentences.  Do you understand that, sir?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And you would have a right to appeal my sentence to that court and it would be based on what you think that I did not follow the law or the Constitution in sentencing you.  Do you understand that?
>
> THE DEFENDANT: I understand that.

(Plea Tr. 11-12.)  As noted previously, the Court later asked Defendant if he had any questions regarding his rights, and Defendant testified that he did not.

Thus, the Plea Agreement demonstrates, and the Court explicitly explained during the plea hearing, that Defendant did not waive his right to appeal his sentence or to file a § 2255.  There is no basis for Defendant's claim that defense counsel was ineffective for causing him to sign a plea agreement that waived his appeal and § 2255 rights.

### 4. Satisfaction with Counsel

Defendant asserts that his attorney pushed him to sign the plea agreement, did not discuss his case with him, and did not tell Defendant the date of his sentencing until he was brought to Court for the sentencing hearing.

During the change of plea hearing, Defendant gave sworn statements that he was satisfied with his attorney and that his attorney had discussed his case with him:

> THE COURT: Have you had sufficient time to talk to your attorney, Mr. Paule, about your case?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And have you gone over the evidence the government has against you and talked about whether or not you should go to trial and whether or not you have any defenses that you would want to assert at your trial and make the government prove you guilty beyond a reasonable doubt?
>
> THE DEFENDANT: Yes, we did.
>
> THE COURT: And are you satisfied with the representation of Mr. Paule in representing you in this case?
>
> THE DEFENDANT: Yes, Your Honor.

(Plea Tr. 13.) Also, as noted previously, the Court later asked Defendant if he had any questions of his counsel or the Court, and Defendant stated that he did

13

not. Defendant's sworn statement that his attorney did go over his case with him and that he was satisfied with his counsel's performance precludes his claim that counsel was ineffective. See, e.g., United States v. Norvell, 729 F.3d 788, 796 (8th Cir. 2013); Nguyen, 114 F.3d at 704.

Defendant also claims that counsel was ineffective for failing to inform him of the date of his sentencing hearing. There is no indication how this alleged failure created a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. Insofar as Defendant is alleging a failure of communication before sentencing, the sentencing transcript reflects, and Defendant does not dispute, that counsel met with Defendant two days before the sentencing and discussed the Guidelines range, including answering Defendant's questions about the range and his criminal history category. (Sentencing Tr. 3.) Additionally, as previously indicated, at the time of the plea hearing, Defendant stated under oath that he was satisfied with his counsel's representation. There is no basis for Defendant's ineffective assistance of counsel allegation.

### 5. Safety Valve

Defendant argues that he thought that he was eligible for safety valve but was disqualified at the time of sentencing. He claims that his lawyer did not inform him that he was ineligible for safety valve.

The Plea Agreement provides that the parties believed, but did not stipulate, that Defendant's criminal history category was II. (Plea Agreement ¶ 5(e).) Under the Guidelines, safety valve cannot apply if a defendant is criminal history category II. See U.S.S.G. § 5C1.2(a)(1). The Guidelines calculations in the Plea Agreement, which Defendant stated that he understood, did not include a reduction based on safety valve. (Plea Tr. 4-5.) The Plea Agreement does not indicate that safety valve would apply. During the plea hearing, Defendant stated under oath that there had been no "promises made to [him] by anyone, other than what's in the plea agreement and sentencing stipulations . . . to get [him] to enter a plea of guilty." (Plea Tr. 12.) Thus, Defendant's new assertion that he was somehow promised that safety valve would apply "fails to overcome the strong presumption of verity that attached to statements made in open court." Nguyen, 114 F.3d at 704 (citations omitted).

The PSR calculated Defendant's criminal history category to be III, not II. However, this fact did not affect application of the safety valve, because Defendant was ineligible for the safety valve at category II or category III. Additionally, statutory safety valve was never implicated because Defendant was not charged with an offense carrying a statutory mandatory minimum sentence. Finally, regardless of defense counsel's actions, due to his criminal history, Defendant could never qualify for safety valve. There is no basis to argue that defense counsel was ineffective with respect to safety valve eligibility.

### 6. Prejudice

"In order to demonstrate prejudice where, as here, a petitioner challenges the validity of his guilty plea, the petitioner must show 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" United States v. Frausto, 754 F.3d 640, 643 (8th Cir. 2014) (citations omitted). Here, Defendant has failed to show a reasonable probability that, but for defense counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial.

The Court fully and accurately advised Defendant of the potential consequences of his plea and, then, Defendant pled guilty, including admitting

the underlying facts of the drug transaction. See Barker v. United States, 7 F.3d 629, 633 (7th Cir. 1993) ("In this case, even if advice from [the petitioner's] trial attorney had led to his misunderstanding of the consequences of his guilty plea, any such confusion was cured by the trial court. The court conducted a thorough examination at the hearing, taking careful and appropriate measures to dispel any confusion on [the petitioner's] part before the plea was accepted. Furthermore, [the petitioner] admitted that he understood the consequences. Thus, the record reflects that [the petitioner's] guilty plea was voluntary and was made with full knowledge of its consequences.") (citation omitted).

### D. Credit for Time Spent in State Custody

Defendant argues that he did not get credit for the time he was in state custody. Defendant was arrested on December 3, 2014 and was transferred to federal custody on February 9, 2016. He appears to claim that this Court ordered that he get credit for that time, but he has not.

During the sentencing hearing, defense counsel and the Government both addressed the issue of credit for the time Defendant spent in Nevada state custody. (Sentencing Tr. 5-6, 8-9.) In response, the Court explicitly reduced Defendant's sentence by 15 months, from 135 months to 120 months, to provide

credit for the 14 months that Defendant spent in state custody. (Sentencing Tr. 9, 13.) Therefore, Defendant's claim that his counsel was ineffective with regard to advocating for and obtaining custody credit is not sustainable.

To the extent that Defendant is arguing that the Bureau of Prisons is incorrectly calculating the credit that he should receive for his time in pretrial detention, such a claim must be brought under 28 U.S.C. § 2241 in the District in which Defendant is confined, which is currently the Western District of Oklahoma. See Bell v. United States, 48 F.3d 1042, 1043–44 (8th Cir. 1995).

### E. Certification of Appealability

With regard to the Court's procedural rulings, the Court concludes that no "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right;" nor would "jurists of reason . . . find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). With regard to the Court's decisions on the merits, it concludes that no "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. Therefore, the Court denies a Certificate of Appealability in this case.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendant Felix Nacedo Flores' Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Docket No. 476] is **DENIED**.

2. The Court **DENIES** a Certificate of Appealability in this case.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 17, 2018         s/ Michael J. Davis
                                            Michael J. Davis
                                            United States District Court